
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

RENEE GARCIA-GONZALEZ, AKA
Renee Garcia, AKA Gillermo Garcia
Lopez, AKA Guillermo Garcia-Gonzalez,
AKA Rene Garcia-Gonzalez, AKA
Gillermo Garcia-Lopez, AKA Guillermo
Lopez-Garcia,

    Petitioner,

 v.

JEFFERSON B. SESSIONS III, Attorney
General,

    Respondent.

No. 16-70257

Agency No. A029-246-975

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted July 12, 2018
Pasadena, California

Before: BERZON, FISHER,** and WATFORD, Circuit Judges.

---

   * This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

   ** The Honorable D. Michael Fisher, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

The Immigration Judge ("IJ") denied Renee Garcia-Gonzalez's claim for protection under the Convention Against Torture, and the Board of Immigration Appeals ("BIA") upheld the IJ's decision and dismissed the appeal. Garcia-Gonzalez now petitions for review of the BIA's decision.

In his removal proceedings, Garcia-Gonzalez provided a declaration setting out his harrowing experiences in his native Mexico and fears of future torture if forced to return. In denying relief under CAT, the IJ offered two distinct grounds for his decision. First, he found that Garcia-Gonzalez's declaration was "insufficient to establish the truth of his claims." Alternatively, he found that, "assuming *arguendo* the truth of [Garcia-Gonzalez's] claims in his declaration, . . . [he] has failed to establish eligibility for deferral under the CAT." The BIA relied on the second ground only, assuming the contents of the declaration to be true for purposes of the appeal and declining to address the IJ's other findings. The BIA then found that Garcia-Gonzalez had not shown that he was more likely than not to be tortured if returned to Mexico.

Substantial evidence does not support the BIA's determination. The evidence in the record, including Garcia-Gonzalez's declaration and country conditions evidence, "compels a reasonable factfinder to conclude that the BIA's

decision is incorrect." *Tampubolon v. Holder*, 610 F.3d 1056, 1059 (9th Cir. 2010).

Garcia-Gonzalez fears torture from three different sources: Mexican police officers, who have beaten him many times in the past; cartel members, who have kidnapped him and murdered his entire family; and mental health institutions, where he has seen police fail to protect patients from one another and, on one occasion, commit mass murder of patients. Although the proper inquiry requires calculating the sum of the weighted probabilities of each particular source of torture, we conclude that Garcia-Gonzalez has shown a likelihood that he will suffer torture at the hands of police officers. Therefore, we need not consider the additional likelihood of torture in mental health institutions or from cartel members.

The proposition that Garcia-Gonzalez is more likely than not to be tortured by Mexican police officers follows from two premises. First, it is nearly certain that, if returned to Mexico, he will again be detained by police officers at some point. Second, it is more likely than not that, if he is detained by police officers, he will suffer harm amounting to torture.

The evidence compels the conclusion that Garcia-Gonzalez is nearly certain to be detained by police officers in Mexico. During the time he has been in

Mexico, he has "constantly" been detained and questioned without cause. He has been arrested on at least three occasions. Police officers have told him that they believe people with tattoos, like him, are criminals. And he has had frequent contact with the police. He has often gone to shelters to get food, where police officers would frequently question and abuse the people in line, including him. This evidence compels the conclusion that, if returned to Mexico, he is virtually certain to be detained by police officers again.

If Garcia-Gonzalez is detained, the evidence also compels the conclusion that it is more likely than not that police officers will inflict harm rising to the level of torture. In the past, Mexican police officers have beaten him with their guns and batons. They have punched him and kicked him during questioning. These beatings have been severe enough to inflict permanent damage, leaving him with constant back pain. Country conditions evidence shows that treatment of this kind—and worse—at the hands of the police is not out of the ordinary. The State Department's Human Rights Report found "frequent reports of citizens and foreign nationals beaten, suffocated, tortured with electric shocks, raped, and threatened with death in custody of arresting authorities." And there was further evidence that "[t]orture remains a widespread practice in Mexico to obtained forced confessions . . . . Common tactics include beatings, asphyxiation, waterboarding,

electric shocks, and death threats." The evidence that Mexican police frequently rely on torture, paired with Garcia-Gonzalez's consistent and frequent past experiences, compels the conclusion that he will more likely than not be tortured in custody. *See Nuru v. Gonzales*, 404 F.3d 1207, 1217–18 (9th Cir. 2005).

Assuming, as the BIA did for the purposes of appeal, that the contents of Garcia-Gonzalez's declaration are true, the record compels the conclusion that he is more likely than not to be tortured in police custody if returned to Mexico. We therefore remand for the BIA to consider the IJ's alternate ground for decision, taking into account not only the risk of torture by police officers but also the other sources of potential future torture (mental health institutions and cartel members) that we have had no need to address.

**PETITION FOR REVIEW GRANTED; CASE REMANDED.**